

0 Item(s) in Basket

Home    Online Services    About us    Contact us

## Civil / Probate Justice System - Docket Information

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH

**RANKIN, JERRY (MD) vs CELEBRITY CRUISES INC**
\* Click on BOOK/PAGE of a particular docket to see the image if it is available \*

**Case Number (LOCAL):** 2011-18732-CA-01 **Dockets Retrieved:** 4     **Filing Date:** 06/17/2011
**Case Number (STATE):** 13-2011-CA-018732-0000-01     **Judicial Section:** 25

| Date | Book/Page | Docket Entry | Comments |
|---|---|---|---|
| 06/17/2011 | | SUMMONS ISSUED | DN01 |
| 06/17/2011 | | DEMAND FOR JURY TRIAL | |
| 06/17/2011 | | COMPLAINT | |
| 06/17/2011 | | CIVIL COVER | |

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH

Civil Search Home | Civil Court Information | Email | Login
Home | Privacy Statement | Disclaimer | Contact Us | About Us
2008 Clerk of the Court. All Rights reserved



S0141755



EXHIBIT
Composite
"A"

☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| DIVISION<br>☑ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☐ OTHER | **CIVIL COVER SHEET** | CASE NUMBER<br>11-18732CA25 |
|---|---|---|

| PLAINTIFF<br>Jerry Rankin, m.o., Octavio Tobar, m.o, Luisa Alexandra Cuesta, m.o, and Jacobo Hincapie, m.o., each on their own behalf, and on behalf of all current and former ship's physicians of Celebrity Cruises, Inc., similarly situated, | VS. DEFENDANT<br>Celebrity Cruises, Inc. | CLOCK IN<br><br>THE ORIGINAL FILED<br>ON   JUN 17 2011<br>IN THE OFFICE OF |
|---|---|---|

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

TYPE OF CASE (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ 001 - Eminent Domain
☑ 003 - Contracts and Indebtedness
☐ 010 - Auto Negligence
☐ 022 - Products Liability
☐ 023 - Condominium
☐ Negligence - Other
   ☐ 097 - Business Governance
   ☐ 098 - Business Torts
   ☐ 099 - Environmental/Toxin Tort
   ☐ 100 - Third Party Indemnification
   ☐ 101 - Construction Defect
   ☐ 102 - Mass Tort
   ☐ 103 - Negligent Security
   ☐ 104 - Nursing Home Negligence
   ☐ 105 - Premises Liability - Commercial
   ☐ 106 - Premises Liability - Residential
   ☐ 107 - Negligence - Other
☐ Real Property/Mortgage Foreclosure
   ☐ 108 - Commercial Foreclosure $0 - $50,000
   ☐ 109 - Commercial Foreclosure $50,001 - $249,999
   ☐ 110 - Commercial Foreclosure $250,000 - or more
   ☐ 111 - Homestead Residential Foreclosure $0 - $50,000
   ☐ 112 - Homestead Residential Foreclosure $50,001 - $249,999
   ☐ 113 - Homestead Residential Foreclosure $250,000 or more
   ☐ 114 - Non-Homestead Residential Foreclosure $0 - $50,000
   ☐ 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
   ☐ 116 - Non-Homestead Residential Foreclosure $250,000 or more
   ☐ 117 - Other Real Property Actions $0 - $50,000
   ☐ 118 - Other Real Property Actions $50,001 - $249,999

☐ 119 - Other Real Property Actions $250,000 or more
☐ Professional Malpractice
   ☐ 094 - Malpractice - Business
   ☐ 095 - Malpractice - Medical
   ☐ 096 - Malpractice - Other professional
☐ Other
   ☐ 120 - Antitrust/Trade Regulation
   ☐ 121 - Business Transactions
   ☐ 122 - Constitutional Challenge - Statute or Ordinance
   ☐ 123 - Constitutional Challenge - Proposed amendment
   ☐ 124 - Corporate Trust
   ☐ 125 - Discrimination - Employment or Other
   ☐ 126 - Insurance Claims
   ☐ 127 - Intellectual Property
   ☐ 128 - Libel/Slander
   ☐ 129 - Shareholder Derivative Action
   ☐ 130 - Securities Litigation
   ☐ 131 - Trade Secrets
   ☐ 132 - Trust Litigation
☐ 133 - Other Civil Complaint
   ☐ 009 - Bond Estreature
   ☐ 014 - Replevin
   ☐ 024 - Witness Protection
   ☐ 080 - Declaratory Judgment
   ☐ 081 - Injunctive Relief
   ☐ 082 - Equitable Relief
   ☐ 083 - Construction Lien
   ☐ 084 - Petition for Adversary Preliminary Hearing
   ☐ 085 - Civil Forfeiture
   ☐ 086 - Voluntary Binding Arbitration
   ☐ 087 - Personal Injury Protection (PIP)

Clerk's web address: www.miami-dadeclerk.com

COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order   Yes ☐ No ☑

REMEDIES SOUGHT (check all that apply).

☑     monetary;

☐     non-monetary declaratory or injunctive relief;

☐     punitive

NUMBER OF CAUSES OF ACTION. [ 4 ]

(specify) Breach of Contract, Wages and Penalties for unpaid Medical Revenue 46 USCA § 10313, Improper Deduction from Wages, Wages and Penalties for Improper deduction from wages 46 USCA § 10313

IS THIS CASE A CLASS ACTION LAWSUIT?

☑ Yes

☐ No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?

☑ No

☐ Yes   If "Yes", list all related cases by name, case number, and court.

_____

_____

_____

_____

IS JURY TRIAL DEMANDED IN COMPLAINT?

☑ Yes

☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _____   Florida Bar # ____29243____
          Attorney or party                     (Bar # if attorney)

Tonya J Meister _____   ____6/17/11____
(type or print name)                               Date

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO:

11-18732CA25

JERRY RANKIN, M.D. OCTAVIO
TOBAR, M.D., LUISA ALEXANDRA
CUESTA, M.D. and JACOBO HINCAPIE,
M.D. each on their own behalf, and on
behalf of all other current and former ship's
physicians of Celebrity Cruises, Inc., similarly
situated,

　　　　　Plaintiffs,

v.

CELEBRITY CRUISES, INC.,

　　　　　Defendant.

_____/

THE STATE OF FLORIDA:

To All and Singular the Sheriffs of the State:

YOU ARE HEREBY COMMANDED to serve this **summons** and a copy of the complaint or petition in this
action on defendant: CELEBRITY CRUISES, INC.

By serving:　　　BRADLEY H. STEIN　　　　As registered agent
　　　　　　　　1050 CARIBBEAN WAY
　　　　　　　　MIAMI, FL 33132

Each defendant is required to serve written defenses to the complaint or petition on Plaintiffs' attorneys, to
wit: Tonya J. Meister, Esquire, MEISTER LAW, LLC, 44 West Flagler Street, Suite 750, Miami, FL 33130,
(305) 590-5570.
within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the
original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or
immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the
relief demanded in the complaint or petition.

JUN 17 2011

WITNESS my hand and the seal of said Court on _____.

　　　　　　HARVEY RUVIN
　　　　　　as Clerk of said Court
　　　　　　by:
　　　　　　as Deputy Clerk
　　　　　　(Court Seal)

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO:          11 - 18 7 3 2CA 25

JERRY RANKIN, M.D, OCTAVIO
TOBAR, M.D., LUISA ALEXANDRA
CUESTA, M.D. and JACOBO HINCAPIE,
M.D. each on their own behalf, and on
behalf of all other current and former ship's
physicians of Celebrity Cruises, Inc., similarly
situated,

        Plaintiffs,

v.

CELEBRITY CRUISES, INC.,

     Defendant.

_____/

THE STATE OF FLORIDA:

To All and Singular the Sheriffs of the State:

YOU ARE HEREBY COMMANDED to serve this **summons** and a copy of the complaint or petition in this action on defendant: CELEBRITY CRUISES, INC.

By serving:        BRADLEY H. STEIN      As registered agent
               1050 CARIBBEAN WAY
               MIAMI, FL 33132

Each defendant is required to serve written defenses to the complaint or petition on Plaintiffs' attorneys, to wit: Tonya J. Meister, Esquire, MEISTER LAW, LLC, 44 West Flagler Street, Suite 750, Miami, FL 33130, (305) 590-5570.
within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on ___JUN 1 7 2011___ .

        HARVEY RUVIN
        as Clerk of said Court
        by: _____ NORTON
          as Deputy Clerk
          (Court Seal)

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY. FLORIDA

11-18732CA 25

JERRY RANKIN, M.D, OCTAVIO
TOBAR, M.D., LUISA ALEXANDRA
CUESTA, M.D. and JACOBO HINCAPIE,
M.D. each on their own behalf, and on
behalf of all other current and former ship's
physicians of Celebrity Cruises, Inc., similarly
situated,

**Class Representation
Class Action Complaint**

Plaintiffs.

THE ORIGINAL FILED

ON   JUN 17 2011

v.

IN THE OFFICE OF
CLERK OF CIRCUIT DADE CO
CIVIL DIVISION

CELEBRITY CRUISES, INC..

Defendant.

## CLASS REPRESENTATION/CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs. JERRY RANKIN, M.D, OCTAVIO TOBAR, M.D.. LUISA

ALEXANDRA CUESTA, M.D. and JACOBO HINCAPIE, M.D. each on their own

behalf, and on behalf of all other current and former ship's physicians of Celebrity

Cruises, Inc.. similarly situated. as defined below, file this Class Representation/Class

Action Complaint against Defendant Celebrity Cruises Inc., and allege as follows:

### JURISDICTION, PARTIES, AND VENUE

1.     This is an action seeking damages in excess of $15.000.00.

2.     The case arises from a breach of contract. federal statutes including but

not limited to the Seaman's Wage Act 46 U.S.C. § 10313 as well as the General Maritime Law of the United States.   Plaintiffs bring this matter in state court pursuant to the Savings to Suitors Clause 28 U.S.C. § 1333.

3.   Plaintiff OCTAVIO TOBAR, M.D. is a citizen of the United States and a is resident of Hillsborough County, Florida

4.   LUISA ALEXANDRA CUESTA, M.D. is a citizen of the United States and is a resident of Marion County, Florida

5.   Plaintiff JERRY RANKIN, M.D. is a citizen of Columbia.

6.   Plaintiff JACOBO HINCAPIE, M.D. is a citizen of Columbia and currently resides in New York, New York.

7.   At all material times, Plaintiff OCTAVIO TOBAR, M.D. was employed by Defendant as a ship's physician onboard various cruise ships owned and controlled by Defendant and is a seaman as defined as 46 U.S.C. § 10101. Plaintiff TOBAR brings this action on behalf of himself, and all other current and former similarly situated Celebrity Cruises Inc. ship's physicians, as defined in the Class Representation Allegations below.

8.   At all material times, LUISA ALEXANDRA CUESTA, M.D. was employed by Defendant as a ship's physician onboard various cruise ships owned and controlled by Defendant and is a seaman as defined as 46 U.S.C. § 10101. Plaintiff CUESTA brings this action on behalf of herself, and all other current and former similarly situated Celebrity Cruises Inc. ship's physicians, as defined in the Class Representation Allegations below.

9.   At all material times, Plaintiff JERRY RANKIN, M.D. was employed by

Defendant as a ship's physician onboard various cruise ships owned and controlled by Defendant and is a seaman as defined as 46 U.S.C. § 10101. Plaintiff RANKIN brings this action on behalf of himself and all other current and former similarly situated Celebrity Cruises Inc. ship's physicians, as defined in the Class Representation Allegations below

10. At all material times, Plaintiff JACOBO HINCAPIE was employed by Defendant as a ship's physician onboard various cruise ships owned and controlled by Defendant and is a seaman as defined as 46 U.S.C. § 10101. Plaintiff HINCAPIE brings this action on behalf of himself, and all other current and former similarly situated Celebrity Cruises Inc. ship's physicians, as defined in the Class Representation Allegations below.

11. Defendant CELEBRITY CRUISES, INC. is a foreign corporation registered to conduct business in the state of Florida. Defendant is a resident of Florida that uses Miami, FL as its base of operations for a passenger cruise line.

12. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessels Constellation, Zenith, Millennium, Mercury, Century, Summit, Galaxy, Infinity and other cruise ships.   These vessels were registered in a flag of convenience country.

13. The purpose of Defendant's cruise ships' voyages was a passenger cruise vacation experience, not medical services.

14. The results of Defendant's cruise ships' voyages were the profits from the

passenger ticket sales, bar sales, casino, shore excursion sales and other revenue generated from the passenger cruise vacation experience. The results of Defendant's cruise ships' voyages did not include medical revenue from the cruise ships' infirmaries.

15. While working on Defendant's ships, Plaintiffs and the other ship doctors similarly situated did not share in the passenger ticket sales, bar sales, casino, or shore excursion sales.

16. While working on Defendant's ships, Plaintiffs and the other ship doctors similarly situated did not share in the profits or the results of the Defendant's cruise ship voyages.

17. Defendant, at all times material hereto, personally or through an agent;

a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b. Was engaged in substantial activity within this state;

c. Operated vessels in the waters of this state;

d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

e. Maintained its base of operations and corporate headquarters in Miami, Dade County, Florida; and,

f. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

18. Defendant is subject to the jurisdiction of the Courts of this state.

19. Venue is proper in Miami-Dade County, Florida.

20.  This matter was originally filed in the United States District Court Southern District of Florida on September 17, 2009 and was assigned case number 09-CIV-22793.

21.  On May 20, 2011 the federal judge dismissed Plaintiffs' breach of contract count without prejudice for lack of subject matter jurisdiction and dismissed Plaintiff's remaining counts with prejudice.  Plaintiff is filing an appeal to the Eleventh Circuit Court of Appeals.

## GENERAL ALLEGATIONS

22. Plaintiff OCTAVIO TOBAR, M.D. worked on board Defendant's vessels from on or about April, 2000 to on or about December 2009.

23. Plaintiff RANKIN worked on board Defendant's vessels from on or about June, 2004 to on or about February 2006.

24. Plaintiff CUESTA worked on board Defendant's vessels from on or about September 1999 to on or about November 2010.

25.  Plaintiff HINCAPIE worked on board Defendant's vessels from on or about 2006 to on or about 2008.

26. During the relevant period Defendant may have, and did, assign some, or all, of the plaintiffs to work on board ships owned by Defendant's related company Royal Caribbean International.

27. Plaintiffs and Defendant entered into a series of contracts which set forth the terms and conditions for Plaintiffs to serve as a ship's physicians on board Celebrity cruise ships. An exemplar contract pertaining to Plaintiff RANKIN is attached as Exhibit "A".  An exemplar contract pertaining to Plaintiff TOBAR is attached as Exhibit "B".

An exemplar contract pertaining to Plaintiff CUESTA is attached as Exhibit "C". An exemplar contract pertaining to Plaintiff HINCAPIE is attached as Exhibit "D".

28. The contracts utilized by Defendant for the employment of the Plaintiffs were identical form contracts prepared by Defendant.

29. Pursuant to the terms of the contracts, Plaintiffs were guaranteed wages and a percentage of total (gross) medical revenues.

30.    The wages based upon a percentage of total medical revenue were earned, owed, due and payable at the conclusion of each and every voyage, without regard to profit or loss of the medical facility.

31. The right to receive as wages, including the full amount of the percentage of total medical revenues, was the essence of the remuneration for Plaintiff's employment.

32. Plaintiffs performed their services and obligations as physicians on board Defendant's vessels as required under the contracts and successfully complied    with all other terms and conditions of the employment contracts.

33. At the conclusion of some of the voyages Plaintiffs were discharged in a United States port.

34. During the course of a cruise Plaintiffs would perform medical procedures, dispense medications, perform physical examinations and other services all of which were charged for and were accounted for by Defendant as "medical revenue".

35. At the end of each cruise voyage, Defendant paid the Plaintiffs their base pay and their percentage of the medical procedures performed during the cruise, but not for medication sales, despite Plaintiffs' demands for same. .

36. Defendant failed and refused to pay Plaintiffs and other current and former

6

ship physicians the full amount of their wages based upon the percentage of the total medical revenues pursuant to their contracts.

37. These actions constitute a serious breach to the provisions of the contracts between Celebrity and the Plaintiffs, as well as those others similarly situated, as former and current ship's physicians.

38. Plaintiffs and those others similarly situated, as former and current ship's physicians, are entitled to the benefit of their contracts with Defendant and to enforce its the provisions thereunder.

## CLASS REPRESENTATION ALLEGATIONS

39. This action is brought by the Plaintiffs as a class action, each on their own behalf, and on behalf of all others similarly situated, under the provisions of Florida Rule of Civil Procedure 1.220.

40. The class so represented by Plaintiffs in this action, and of which Plaintiff themselves are members, consist of all current and former employees of Celebrity Cruises Inc. employed at any time during the period of September 17, 2004 to the present as "ship's physicians" or "ship's doctors" on Celebrity Cruises, Inc. vessels who are/were entitled to a percentage of the total medical revenues pursuant to their contracts.

(a) These ship's physicians/doctors were subjected to illegal withholding and delay of their wages, nonpayment of their wages, as a result of the Defendant failing to pay them their wages based upon the total medical revenues as required by their employment contracts and the improper requirement for the individuals to obtain medical insurance in contravention of Defendant's maintenance and cure obligation. This constitutes a breach

of their contracts, as to which Defendant's current and former ship's physicians/doctors are entitled to benefit from and to enforce its provisions thereunder.

41. The exact number of members of the class is not known, but based upon the number of ships in Defendant's fleet, the number of doctors serving on board simultaneously and the length of the employment contracts it is estimated that there are about 41 members. The members of the class are similarly situated United States and foreign citizens living in the United States, abroad or aboard ships. The class is so numerous that joinder of all members is impracticable. This action satisfies the requirements of Florida Rule of Civil Procedure 1.220 (a)(1).

42. The Defendant herein utilizes the same form contract for the employment of the members of the class and the failure to pay wages or illegal deduction applies equally to each member of the class, therefore, there are common questions of law and fact that relate to and affect the rights of each members of the class and the relief sought is common to the entire class. The failure to pay the contracted for wage and the improper deduction of medical insurance expense on the part of Defendant occurred involving each individual class members, and each seeks to recover for Celebrity's breach of contract/improper deduction of wages and violation of Seaman's Wage Act. This action satisfies the requirement of Florida Rule of Civil Procedure 1.220 (a)(2).

43. The claims of Plaintiffs are typical of the claims of the class, in that the claims of all members of the class, depend upon a showing of the acts and omissions of Defendant Celebrity, giving rise to the right of Plaintiffs to the relief sought herein. Defendant engaged in a common course of conduct to the detriment of the class of

Plaintiffs.  This action satisfies the requirements of Florida Rule of Civil Procedure 1.220 (a)(3).

44.     Plaintiffs RANKIN, TOBAR, CUESTA and HINCAPIE are the representative parties for the class, and are able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiffs RANKIN, TOBAR, CUESTA and HINCAPIE and other members of the class  with respect to this action, or with respect to the claims for relief herein. The attorneys for Plaintiff are experienced and capable in the field of maritime claims for wages and have successfully represented claimants in other litigation of this nature. This action satisfies the requirement of Florida Rule of Civil Procedure 1.220 (a)(4).

45.     This action is properly maintained as a class action under Florida Rule of Civil Procedure 1.220 (b)(3) in as much as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of controversy. In support of the forgoing, Plaintiff alleges that common issues predominate and can be determined on a class-wide basis regarding: a) the contracts pertaining to the wages of the class members, b) Celebrity's breach of their contracts, and the improper requirement for the individuals to obtain medical insurance in contravention of Defendant's maintenance and cure obligation.

46.     A class action is superior to other available methods for the fair and efficient adjudication of controversy because it is highly unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiffs are not aware of any class members who are interested in individually controlling the prosecution

of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Defendant in a single forum, and individual actions by class members, many of whom are foreign nationals would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

## COUNT I
## BREACH OF CONTRACT

47. Plaintiffs adopts and realleges Paragraphs 1 through 46 as if fully set forth herein, and further alleges as follows:

48. At all material times herein, Defendant breached its contract with Plaintiffs, and the other former and current ship's physicians defined above by failing to pay them their commission of the total medical revenues pursuant to their contracts which caused them damages.

WHEREFORE, Plaintiffs and the other former and current ship physicians defined above demand judgment against the Defendant for damages, wages, penalties, court costs, attorney's fees and pre and post judgment interest as permitted by law and any other relief this Court deems just and appropriate.

## COUNT II
## WAGES AND PENALTIES FOR UNPAID MEDICAL REVENUE
## 46 USCA § 10313

49. Plaintiffs realege, incorporate by reference, and adopts Paragraphs 1 through 48 as though originally alleged herein.

50. At all times material hereto, Plaintiffs and the other former and current ship physicians defined above were employed as a seaman in the service of the vessel.

51. While in the service of the ship. Plaintiffs and the other former and current ship's physicians defined above performed all the work required of them, and carried out the orders given by their superiors.

52. At all material times. Plaintiffs did not share in the profit or result of a voyage.

53. Plaintiffs were discharged without any lawful, just or sufficient cause.

54. During the applicable time periods set forth above. at the time of Plaintiffs discharge from a foreign or intercoastal voyage, the vessels were at various times in a port of the United States.

55. Defendant did not pay Plaintiffs and the other former and current ship's physicians defined above all of their earned wages when due. Defendant has sole custody and control of the wage records and personnel files of Plaintiffs and the other former and current ship physicians defined above. These documents show exact dates and amounts with respect to earned wages owing to Plaintiffs and the other former and current ship physicians defined above.

56. Plaintiffs and the others demanded all their wages.

57. Defendant refused to pay Plaintiffs and the other former and current ship's physicians defined above all their earned wages, without sufficient cause.

58. Under 46 U.S.C.A. Section 10313. Plaintiffs the other former and current ship's physicians defined above are entitled to their earned wages. deductions. and two days wages for each day payment is delayed.

WHEREFORE. Plaintiffs and the other former and current ship's physicians defined above demand judgment against Defendant for damages, wages, penalties,

attorney's fees and pre and post judgment interest as permitted by law and any other relief this Court deems just and appropriate.

## COUNT III
## IMPROPER DEDUCTION FROM WAGES

59.    Plaintiffs realege, incorporate by reference, and adopts Paragraphs 1 through 58 as though originally alleged herein

60. At all times material hereto Plaintiffs were employed by Defendant to work on its vessels as ship's physicians.   As ship's physicians the Plaintiffs herein were permanently assigned to one of Defendant's vessels, those vessels were in navigation and Plaintiffs contributed to the work or mission of the vessels which was to provide passenger cruise vacation experiences.

61. As seamen the Plaintiffs were entitled to the benefit of maintenance and cure if they were to fall ill or injured while in the service of or subject to the call of the vessel. Maintenance is defined as the seaman's reasonable expenses of room and board while ashore until the seaman is found fit for duty or until he/she reaches maximum medical benefit.   Cure is the reasonable medical expenses incurred by the seaman for curative treatment.   *Caufield v. AC&D Marine, Inc.*, 633 F.2d 1129 (5th Cir 1982).   Defendant is not able to contract away its maintenance and cure obligation.   *Alt Sounding Co. v. Townsend*, 129 S.Ct. 2561 (2009); *Vaughn v. Atkinson*, 369 U.S. 527 (1962); *De Zon v. American President Lines. Ltd.* 318 U.S. 660 (1943).

62. Notwithstanding the Defendant's obligation to provide the seaman/doctor with maintenance and cure and the Defendant's inability to abrogate this obligation by contract, Defendant has attempted to avoid its obligation by requiring that the Plaintiffs purchase health insurance and pay the premium for said insurance as a condition of

employment.  Defendant knew that said requirement was an impermissible attempt to contractually abrogate its obligation to provide maintenance and cure.

63. The requirement to purchase health insurance and/or failing to pay/reimburse medical expenses  is an impermissible deduction.

64. By requiring the Plaintiffs to pay for their own health insurance and/or failing to pay/reimburse medical expenses  has resulted in a de facto deduction from Plaintiffs wages and therefore Defendant has effectively failed to properly pay Plaintiffs their earned wages.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, wages penalties, attorney fees and pre and post judgment interest and such other further relief as the Court deems just and proper.

## COUNT IV
### WAGES AND PENALTIES FOR IMPROPER DEDUCTION FROM WAGES
### 46 USCA § 10313

65.  Plaintiffs realege, incorporate by reference, and adopts Paragraphs 1 through 64 as though originally alleged herein.

66. At all times material hereto, Plaintiffs and the other former and current ship physicians defined above were employed as seamen in the service of the vessel.

67. The requirement to purchase health insurance and/or failing to pay/reimburse medical expenses  is an impermissible deduction and is subject to penalty in accordance with 46 USC 10313.

68.  By requiring the Plaintiffs to pay for their own health insurance and/or failing to pay/reimburse medical expenses has resulted in a de facto deduction from Plaintiffs wages and therefore Defendant has effectively failed to properly pay Plaintiffs their

13

earned wages which respect to voyages that began and/or finished in Ports in the United States.

69. While in the service of the ship, Plaintiffs and the other former and current ship's physicians defined above performed all the work required of them, and carried out the orders given by their superiors.

70. At all material times, Plaintiffs did not share in the profit or result of a voyage.

71. Plaintiffs were discharged without any lawful, just or sufficient cause.

72. During the applicable time periods set forth above, at the time of Plaintiffs discharge from a foreign or intercoastal voyage, the vessels were at various times in a port of the United States.

73. Defendant did not pay Plaintiffs and the other former and current ship's physicians defined above all of their earned wages when due. Defendant has custody and control of the wage records and personnel files of Plaintiff and the other former and current ship physicians defined above. These documents show exact dates and amounts with respect to earned wages owing to Plaintiffs and the other former and current ship physicians defined above.

74. Plaintiffs and the others demanded all their wages, including the improper deductions and/or payment/reimbursement of medical insurance/medical expenses.

75. Defendant refused to pay Plaintiffs and the other former and current ship's physicians defined above all their earned wages, without sufficient cause.

76. Under 46 U.S.C.A. Section 10313, Plaintiffs the other former and current ship's physicians defined above are entitled to their earned wages, deductions, and two days wages for each day payment is delayed.

WHEREFORE, Plaintiffs and the other former and current ship's physicians defined above demand judgment against Defendant for damages, wages, penalties, attorney's fees and pre and post judgment interest as permitted by law and any other relief this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs also demands trial by jury.

Respectfully submitted,

By: _____
TONYA J. MEISTER
FLORIDA BAR NO. 0629243
MEISTER LAW, LLC
Courthouse Tower, Suite 750
44 West Flagler Street
Miami, Florida 33130
Phone: (305) 590-5570
Fax: (305) 675-3787

15

## SHIP INDEPENDENT CONTRACTOR - PHYSICIAN CONTRACT

The parties agree that the following terms and conditions shall govern the shipboard contract of (Print Below).

Dr.    Jerry RANKIN
Ship:  GTS Constellation
Position Title:      ☐ Doctor        XXX Chief Doctor
Contract Period - From (Month/Day/Year) November 10th,2005  TO (Month/Day/Year) February 10th, 2006

### Base Monthly Payment

Chief Doctor      $3,700/month + 9% commission on total medical revenues
Doctor            $3,200/month + 8% commission on total medical revenues

1. **Independent Contractor:** The parties agree that the above named physician is independently contracted to provide professional medical services onboard the above named CELEBRITY CRUISES, Inc ship, and at all times material hereto, the physician shall operate as and be considered an independent contractor and not an employee of CELEBRITY CRUISES INC. For both positions, base monthly payment includes any/all commission(s), including commissions generated from liability/accident related "Complimentary" services (where applicable, complimentary services is strictly defined to include only liability related complimentary services, and not to include GI/Norovirus related services, which are no longer payable under the complimentary account, and now covered by the maximum CAP program). Where payable, the liability related complimentary account payments (not including GI/Norovirus cases) are calculated at $120 per patient: = $30 to each doctor; $20 to each nurse on 2 Doctor/3 nurse ships – and subject to pre-approval by the Hotel Director. This provision is also applicable to dry-dock periods.

2. **Complimentary Account for GI/ Norovirus Cases – Cap System:** a one time payment ($3,500 for ships with 2 doctors, 3 nurses or $3,000 for ships with 1 doctor and 2 nurses) will be split between the members of the medical team in Code Red situations only as follows: $1,000 to each doctor, and $500 to each nurse for ships with 2 doctors, 3 nurses; $1500 per doctor and $750 per nurse for ships with 1 doctor and 2 nurses, per cruise. Cruises which remain in code red following an outbreak cruise would begin anew and would not be eligible for the one time code red payment unless and until the ship again reached the Code Red definition of 1.5% of ill guests on that (subsequent) cruise. To clarify, our guests will not be charged for GI / Norwalk related medical treatment under any code – whether Green, Yellow or Red.

3. **Travel – Airline ticket and Lodging:** An airline ticket to the designated ship will be provided by the Company. Lodging will be provided if necessary and as determined and arranged by the company. All ground transportation expenses incurred for travel to/from home and to/from the airport are not reimbursable, as this is a personal expense. The return portion of the airline ticket will be provided upon satisfactory completion of the full contracted period.

4. **Overlap period:** Newly hired physicians joining CELEBRITY CRUISES INC., for their first contract will be offered a maximum of 1 week overlap period, in which they are afforded the opportunity to familiarize themselves with the medical facility and non-medical administrative tasks in order to make their transition period less taxing. During this overlap period the doctor will be paid a maximum of $50 per day and no commissions, comps or other payments.

5. **Independent Contractor – Cruising Privileges:** The above named physician will be eligible for vendor cruise rates in accordance with the terms and conditions detailed in the company SQM manual. As stated in SQM, a newly employed Physician serving a 1st contract will not be permitted to have guest(s) sailing privileges for the first 3 months of the contract unless and until specifically approved by the Director of Risk Management. A returning physician serving a full contract will be allowed to have his/her spouse and minor children on board for a maximum of four weeks in the Doctor's cabin free of charge. Children travel requests will be granted at the Master's discretion, dependent upon factors including other family visits at the time and officers' seniority. The Physician will be responsible for his/her family's transportation expenses to and from the vessel.

6. **Notice Provision:** In the event the physician cannot fulfill the stated shipboard term for any reason, physician agrees to give the company a minimum of 14 days written notice. In the event it becomes necessary for the physician to leave the ship for a period exceeding ten days due to medical reasons or other reasons, this contract shall be considered terminated. Physician understands and agrees that the Company may terminate this agreement with or without cause provided 7 days notice is given or 7 days pay is given in lieu of notice.



EXHIBIT

A

7. **Attire:** In order to ensure uniformity and professional appearance, the above named physician will be provided with a standard white physician lab coat, which must be worn while providing medical services in the medical facility over standard business suit attire provided by the company. While the physician is wearing the lab coat he/she is not required to wear the uniform jacket under the lab coat.

8. **Hours:** It is further understood and agreed that, in addition to the established shipboard medical facility schedule and hours, in the event of a medical emergency or necessity, the named physician will be required to work at any time of day or night, and that, at no time, on two doctor ships, under any circumstances, are both physicians to be absent from the vessel at the same time. Ships with one doctor may be permitted ashore with permission of the Master, and must carry and remain within radio range of the ship at all times. As an Independent Contractor, ship's physician is not eligible for overtime payment. If necessary, the physician may be transferred to any CELEBRITY CRUISES INC. vessel during the tenure of this contract, under the aforementioned conditions.

9. **Taxes:** The parties agree that it is the sole responsibility of the doctor to report compensation earned under this contract to any and all tax authorities that may have jurisdiction over the doctor by virtue of tax residence or any other means and to compute and pay any taxes of whatever nature that may be due thereon to that taxing jurisdiction. It is understood that Royal Caribbean and Celebrity are not required to report and withhold income taxes, social insurance taxes or any other kind of tax from the compensation paid under this contract. Such position is applicable only to CELEBRITY CRUISES INC as payor of the compensation under this agreement and is not intended to be nor should it be considered an opinion or a conclusion that such income is not subject to tax in the hands of the doctor in any relevant jurisdiction. Further, the doctor agrees to hold CELEBRITY CRUISES harmless in the event any jurisdiction successfully imposes any form of employment tax, income tax or social insurance tax on the compensation paid under this agreement and agrees to reimburse CELEBRITY CRUISES for any such taxes paid plus penalties and interest assessed thereon.

10. **Insurance/Liability:** As shipboard physicians are independently contracted to provide medical services to guests and crew onboard the above named ship, the named physician is encouraged to secure applicable medical malpractice insurance in amounts and limits of his/her choosing   In recognition of the difficulty of the named physician to locate and secure appropriate medical malpractice insurance in consideration of the unusual nature and constraints of the shipboard environment, including limited 3-6 month contract periods, variable ship flag state and licensing requirements, and constantly shifting treatment locales, as a convenience to the named physician the company has elected to secure a basic insurance coverage not to exceed the sum of one million United States dollars ($1,000,000) per medical malpractice incident.

11. **Insurance/Health:** Shipboard Independent Contractor **Physicians** shall obtain and maintain personal health insurance, which shall cover both work and non-work related injuries and illness. Proof of such coverage shall be provided to CELEBRITY CRUISES INC upon request. If you are unable to locate such coverage we suggest contacting Marine Health Guard at 305.530.0086, or, benefits@mhgmarine.com.

12. **Personal Expenses:** The above named physician is responsible for any expenses incurred for Pre-Employment Medical, ACLS certification or recertification, and any charges incurred to obtain necessary Visa to travel.

In Witness Hereto: the parties set their hand and seal:

Vincent J. Warger, Jr.
Director, Claims & Medical Services
Royal Caribbean International / Celebrity Cruises

Physician Signature:

_____        _____

_____/Date   _____/Date

SHIP INDEPENDENT CONTRACTOR - PHYSICIAN CONTRACT

The parties agree that the following terms and conditions shall govern the shipboard contract of (Print Below).

Dr. Octavio TOBAR, MD
Ship: GTS CONSTELLATION
Position Title: Chief Doctor
Contract Period - From (Month/Day/Year) June 30, 2008 TO (Month/Day/Year) December 15, 2008

**Base Monthly Payment**

Chief Doctor $3,700/month + 9% commission on total medical revenues
Doctor $3,200/month + 6% commission on total medical revenues

Ships with one doctor will have a 15% commission rate on total medical revenues

1. **Independent Contractor - Minimum Guarantee Provision:** The parties agree that the above named physician is independently contracted to provide professional medical services onboard the above named Royal Caribbean Cruises Ltd. ship, and at all times material hereto, the physician shall operate as and be considered an independent contractor and not an employee of Royal Caribbean Cruises Ltd. or any of its subsidiaries. The parties agree that the above named physician shall be paid a minimum contracted amount as follows: Chief Doctor shall be paid a minimum of USD $7,000 in total compensation per month and Doctor shall be paid a minimum of USD $6,500 in total compensation per month actually worked on the ship. For both positions, base monthly payment includes any/all commission(s), including commissions generated from liability/accident related "Complimentary" services (where applicable, complimentary services is strictly defined to include only liability related complimentary services, and not to include GI/Norovirus related services, which are no longer payable under the complimentary account, and now covered by the maximum CAP program). Where payable, the liability related complimentary account payments (not including GI/Norovirus cases) are calculated at $120 per patient: = $30 to each doctor; $20 to each nurse on 2 Doctor/3 nurse ships -- and subject to pre-approval by the Hotel Director. This provision is also applicable to dry-dock periods. The minimum guarantee is not payable in advance, and is applicable only if the physician works the entire month period, and inapplicable if the physician resigns or is terminated before the end of the contract. In such cases, the physician will be compensated at a prorated rate of the monthly base payment.

2. **Complimentary Account for GI/ Norovirus Cases – Cap System:** a one time payment ($3,500 for ships with 2 doctors, and 3 nurses or $3,000 for ships with 1 doctor and 2 nurses) will be split between the members of the medical team when Code Red reaches 1.5% or higher only as follows: $1,000 to each doctor, and $500 to each nurse for ships with 2 doctors, 3 nurses; $1500 per doctor and $750 per nurse for ships with 1 doctor and 2 nurses, per cruise. Cruises which remain in code red following an outbreak cruise would begin anew and would not be eligible for the one time code red payment unless and until the ship again reached the Code Red definition of 1.5% of ill guests on that (subsequent) cruise. To clarify, our guests will not be charged for GI / Norwalk related medical treatment under any code - whether Green or Red. There is no additional compensation for medical team for GI cases when the ship decides to go to Code Red under the "6 in 6" system, unless and until the ship reaches 1.5% or higher.

3. **Travel – Airline ticket and Lodging:** An airline ticket from the doctor's gateway city to the designated ship will be provided by the Company. Lodging will be provided if necessary and as determined and arranged by the company. All ground transportation expenses incurred for travel to/from home and to/from the airport are not reimbursable, as this is a personal expense. Upon signing on to the vessel the doctor will provide a return ticket deposit equal to the price of an airline ticket to the doctor's gateway city. Upon satisfactory completion of the full contracted period, the deposit will be returned. As shipboard physician is an independent contractor and not an employee of Royal Caribbean Cruises Ltd., the above named physician is not eligible for compassionate leave. If a physician needs to disembark the ship due to a family emergency, all travel must be arranged and approved by the Risk Management department. The above named physician is responsible for any/all travel expenses for both themselves and their replacement during their absence. Please do not contact Risk Management or the Travel Department with any special requests including special meals, seating, upgrades, etc.

4. **One Time Overlap Period:** Newly hired physicians joining Royal Caribbean Cruises Ltd., for their first contract with the company will be offered a maximum of 1 week overlap period, in which they are afforded the opportunity to familiarize themselves with the medical facility and non-medical administrative tasks in order to make their transition period less taxing. During this overlap period the overlaping doctor will be paid a maximum of $50 per day and no commissions, comps or other payments. Once a Doctor has worked onboard the ship s/he will not be eligible for another overlap period with the company.

5. **Independent Contractor – Sailing Privileges:** The above named physician will be eligible for vendor cruise rates in accordance with the terms and conditions detailed in the company SQM manual. As stated in SQM, a newly contracted Physician serving a 1st contract will not be permitted to have guest(s) sailing privileges for the first 3 months of the contract unless and until specifically approved by the Director of Risk Management. A returning physician serving a full contract will be allowed to have his/her spouse and minor children on board for a maximum of four weeks in the Doctor's cabin free of charge. Children travel requests will be granted at the Master's discretion, dependent upon factors including other family visits at the time and officers' seniority. At no time will an unaccompanied minor be allowed as a guest. The Physician will be responsible for his/her family's transportation expenses to and from the vessel.

Physician Signature

CEL(2) 0000469 3/1/11                    06/08


EXHIBIT
B

6.   **Notice Provision:** In the event the physician cannot fulfill the stated shipboard term for any reason, physician agrees to give the company a minimum of 14 days written notice. In the event it becomes necessary for the physician to leave the ship for a period exceeding ten days due to medical reasons or other reasons, this contract shall be considered terminated. Physician understands and agrees that the Company may terminate this agreement with or without cause provided 7 days notice is given or 7 days pay is given in lieu of notice.

7.   **Attire:** In order to ensure uniformity and professional appearance, the above named physician will be provided with a standard white physician lab coat, which must be worn while providing medical services in the medical facility over standard business suit attire. Pursuant to company policy, all employees and contractors are required to purchase uniforms at their own expense. While the physician is wearing the lab coat s/he is not required to wear the uniform jacket under the lab coat.

8.   **Hours:** It is further understood and agreed that, in addition to the established shipboard medical facility schedule and hours, in the event of a medical emergency or necessity, the named physician will be required to work at any time of day or night, and that, at no time, on two doctor ships, under any circumstances, are both physicians to be absent from the vessel at the same time. Ships with one doctor may be permitted ashore with permission of the Master, and must carry and remain within radio range of the ship at all times. As an independent Contractor, ship's physician is not eligible for overtime payment. If necessary the physician may be transferred to any ROYAL CARIBBEAN CRUISES LTD. vessel during the tenure of this contract, under the aforementioned conditions.

9.   **Ship Phones and Cell Phones:** The above named physician understands and agrees that all ship's phones and medical facility cell phones are for BUSINESS PURPOSES ONLY. Telephone calls can and will be monitored on a per cruise and per position basis. All persons are encouraged to purchase calling cards for all personal calls.

10.  **Taxes:** The parties agree that it is the sole responsibility of the doctor to report compensation earned under this contract to any and all tax authorities that may have jurisdiction over the doctor by virtue of tax residence or any other means and to compute and pay any taxes of whatever nature that may be due thereon to that taxing jurisdiction. It is understood that Royal Caribbean and Celebrity are not required to report and withhold income taxes, social insurance taxes or any other kind of tax from the compensation paid under this contract. Such position is applicable only to Royal Caribbean as payor of the compensation under this agreement and is not intended to be nor should it be considered an opinion or a conclusion that such income is not subject to tax in the hands of the doctor in any relevant jurisdiction. Further, the doctor agrees to hold Royal Caribbean harmless in the event any jurisdiction successfully imposes any form of employment tax, income tax or social insurance tax on the compensation paid under this agreement and agrees to reimburse Royal Caribbean for any such taxes paid plus penalties and interest assessed thereon.

11.  **Insurance/Liability:** As shipboard physicians are independently contracted to provide medical services to guests and crew onboard the above named ship, the named physician is encouraged to secure applicable medical malpractice insurance in amounts and limits of his/her choosing. In recognition of the difficulty of the named physician to locate and secure appropriate medical malpractice insurance in consideration of the unusual nature and constraints of the shipboard environment, including limited 3-6 month contract periods, variable ship flag state and licensing requirements, and constantly shifting treatment locales, as a convenience to the named physician the company has elected to secure a basic insurance coverage for the benefit of the doctor not to exceed the sum of one million United States dollars ($1,000,000) per medical malpractice incident.

12.  **Medical Leave:** As shipboard physician is an independent contractor and not an employee of Royal Caribbean Cruises Ltd., the above named physician is not eligible for any medical leave and/or benefits.

13.  **Sick Wages:** Should the above named shipboard physician become sick or injured during the course of this contract, the physician be shall be eligible for unearned sick wages for the length of the voyage during which the physician became sick or injured.

14.  **Insurance/Health:** Shipboard Independent Contractor Physicians shall obtain and maintain personal health insurance, which shall cover both work and non-work related injuries and illness. Proof of such coverage shall be provided to RCCL upon request. If you are unable to locate such coverage we suggest contacting Marine Health Guard at 305.930.0086, or, benefits@mngmarine.com.

15.  **Personal Expenses:** The above named physician is responsible for any expenses incurred for Pre-Employment Medical, ACLS certification or recertification, medical license(s), passport, or any charges incurred to obtain necessary Visa to travel.

In Witness Hereto, the parties set their hand and seal:

_____
Physician Signature

6-18-08  /Date

Vincent J. Werger, Jr., JD
Director, Claims & Medical Services
Royal Caribbean Cruises Ltd.

_____

6/24/08  /Date

06/08

SHIP INDEPENDENT CONTRACTOR - PHYSICIAN CONTRACT

The parties agree that the following terms and conditions shall govern the shipboard contract of (Print Below):

Dr. Alexandra CUESTA, MD
Ship:          GTS INFINITY
Position Title:        Doctor
Contract Period - From (Month/Day/Year) June 20, 2008      TO (Month/Day/Year) November 20, 2008

**Base Monthly Payment**

Chief Doctor      $3,700/month + 9% commission on total medical revenues
Doctor         $3,200/month + 8% commission on total medical revenues

1.   **Independent Contractor:** The parties agree that the above named physician is independently contracted to provide professional medical services onboard the above named CELEBRITY CRUISES, Inc ship, and at all times material hereto, the physician shall operate as and be considered an independent contractor and not an employee of CELEBRITY CRUISES INC. For both positions, base monthly payment includes any/all commission(s), including commissions generated from liability/accident related "Complimentary" services (where applicable, complimentary services is strictly defined to include only liability related complimentary services, and not to include GI/Norovirus related services, which are no longer payable under the complimentary account, and now covered by the maximum CAP program). Where payable, the liability related complimentary account payments (not including GI/Norovirus cases) are calculated at $120 per patient: = $30 to each doctor; $20 to each nurse on 2 Doctor/3 nurse ships – and subject to pre-approval by the Hotel Director. This provision is also applicable to dry-dock periods.

2.   **Complimentary Account for GI/ Norovirus Cases – Cap System:** a one time payment ($3,500 for ships with 2 doctors, and 3 nurses or $3,000 for ships with 1 doctor and 2 nurses) will be split between the members of the medical team when Code Red reaches 1.5% or higher only as follows: $1,000 to each doctor, and $500 to each nurse for ships with 2 doctors, 3 nurses; $1500 per doctor and $750 per nurse for ships with 1 doctor and 2 nurses, per cruise. Cruises which remain in code red following an outbreak cruise would begin anew and would not be eligible for the one time code red payment unless and until the ship again reached the Code Red definition of 1.5% of ill guests on that (subsequent) cruise. To clarify, our guests will not be charged for GI / Norwalk related medical treatment under any code – whether Green, Yellow or Red. There is no additional compensation for medical team for GI cases when the ship decides to go to Code Red under the "6 in 6" system, unless and until the ship reaches 1.5% or higher.

3.   **Travel – Airline ticket and Lodging:** An airline ticket to the designated ship will be provided by the Company. Lodging will be provided if necessary and as determined and arranged by the company. All ground transportation expenses incurred for travel to/from home and to/from the airport are not reimbursable, as this is a personal expense. The return portion of the airline ticket will be provided upon satisfactory completion of the full contracted period.

4.   **Overlap period:** Newly hired physicians joining CELEBRITY CRUISES INC., for their first contract will be offered a maximum of 1 week overlap period, in which they are afforded the opportunity to familiarize themselves with the medical facility and non-medical administrative tasks in order to make their transition period less taxing. During this overlap period the doctor will be paid a maximum of $50 per day and no commissions, comps or other payments.

5.   **Independent Contractor – Cruising Privileges:** The above named physician will be eligible for vendor cruise rates in accordance with the terms and conditions detailed in the company SQM manual. As stated in SQM, a newly employed Physician serving a 1st contract will not be permitted to have guest(s) sailing privileges for the first 3 months of the contract unless and until specifically approved by the Director of Risk Management. A returning physician serving a full contract will be allowed to have his/her spouse and minor children on board for a maximum of four weeks in the Doctor's cabin free of charge. Children travel requests will be granted at the Master's discretion, dependent upon factors including other family visits at the time and officers' seniority. The Physician will be responsible for his/her family's transportation expenses to and from the vessel.

6.   **Notice Provision:** In the event the physician cannot fulfill the stated shipboard term for any reason, physician agrees to give the company a minimum of 14 days written notice. In the event it becomes necessary for the physician to leave the ship for a period exceeding ten days due to medical reasons or other reasons, this contract shall be considered terminated. Physician understands and agrees that the Company may terminate this agreement with or without cause provided 7 days notice is given or 7 days pay is given in lieu of notice.

7.   **Attire:** In order to ensure uniformity and professional appearance, the above named physician will be provided with a standard white physician lab coat, which must be worn while providing medical services in

03/08



EXHIBIT
C

CEL(2) 0000120 3/1/11

the medical facility over standard business suit attire provided by the company. While the physician is wearing the lab coat he/she is not required to wear the uniform jacket under the lab coat.

8. **Hours:** It is further understood and agreed that, in addition to the established shipboard medical facility schedule and hours, in the event of a medical emergency or necessity, the named physician will be required to work at any time of day or night, and that, at no time, on two doctor ships, under any circumstances, are both physicians to be absent from the vessel at the same time. Ships with one doctor may be permitted ashore with permission of the Master, and must carry and remain within radio range of the ship at all times. As an Independent Contractor, ship's physician is not eligible for overtime payment. If necessary, the physician may be transferred to any **CELEBRITY CRUISES INC.** vessel during the tenure of this contract, under the aforementioned conditions.

9. **Taxes:** The parties agree that it is the sole responsibility of the doctor to report compensation earned under this contract to any and all tax authorities that may have jurisdiction over the doctor by virtue of tax residence or any other means and to compute and pay any taxes of whatever nature that may be due thereon to that taxing jurisdiction. It is understood that Royal Caribbean and Celebrity are not required to report and withhold income taxes, social insurance taxes or any other kind of tax from the compensation paid under this contract. Such position is applicable only to CELEBRITY CRUISES INC as payor of the compensation under this agreement and is not intended to be nor should it be considered an opinion or a conclusion that such income is not subject to tax in the hands of the doctor in any relevant jurisdiction. Further, the doctor agrees to hold CELEBRITY CRUISES harmless in the event any jurisdiction successfully imposes any form of employment tax, income tax or social insurance tax on the compensation paid under this agreement and agrees to reimburse CELEBRITY CRUISES for any such taxes paid plus penalties and interest assessed thereon.

10. **Insurance/Liability:** As shipboard physicians are independently contracted to provide medical services to guests and crew onboard the above named ship, the named physician is encouraged to secure applicable medical malpractice insurance in amounts and limits of his/her choosing. In recognition of the difficulty of the named physician to locate and secure appropriate medical malpractice insurance in consideration of the unusual nature and constraints of the shipboard environment, including limited 3-6 month contract periods, variable ship flag state and licensing requirements, and constantly shifting treatment locales, as a convenience to the named physician the company has elected to secure a basic insurance coverage not to exceed the sum of one million United States dollars ($1,000,000) per medical malpractice incident.

11. **Insurance/Health:** Shipboard Independent Contractor Physicians shall obtain and maintain personal health insurance, which shall cover both work and non-work related injuries and illness. Proof of such coverage shall be provided to CELEBRITY CRUISES INC upon request. If you are unable to locate such coverage we suggest contacting Marine Health Guard at 305.530.0086, or, benefits@mhgmarine.com.

12. **Personal Expenses:** The above named physician is responsible for any expenses incurred for Pre-Employment Medical, ACLS certification or recertification, and any charges incurred to obtain necessary Visa to travel.

In Witness Hereto: the parties set their hand and seal:

Physician Signature:

_____
6/20/08        /Date

Vincent J. Warger, Jr.
Director, Claims & Medical Services
Royal Caribbean International / Celebrity Cruises

_____
/Date

03/08

## SHIP INDEPENDENT CONTRACTOR - PHYSICIAN CONTRACT

The parties agree that the following terms and conditions shall govern the shipboard contract of (Print Below):

Dr.     Jacobo HINCAPIE, MD.

Ship:    My CENTURY

Position Title:     ☐ Doctor       XXX   Chief Doctor

Contract Period - From (Month/Day/Year) **October 29th, 2005** TO (Month/Day/Year) **December 5th, 2005**

### Base Monthly Payment

Chief Doctor     $3,700/month + 9% commission on total medical revenues

Doctor           $3,200/month + 6% commission on total medical revenues

1   **Independent Contractor:** The parties agree that the above named physician is independently contracted to provide professional medical services onboard the above named CELEBRITY CRUISES, Inc ship, and at all times material hereto, the physician shall operate as and be considered an independent contractor and not an employee of CELEBRITY CRUISES INC. For both positions, base monthly payment includes any/all commission(s), including commissions generated from liability/accident related "Complimentary" services (where applicable, complimentary services is strictly defined to include only liability related complimentary services, and not to include GI/Norovirus related services, which are no longer payable under the complimentary account, and now covered by the maximum CAP program). Where payable, the liability related complimentary account payments (not including GI/Norovirus cases) are calculated at $120 per patient; = $30 to each doctor; $20 to each nurse on 2 Doctor/3 nurse ships – and subject to pre-approval by the Hotel Director. This provision is also applicable to dry-dock periods.

2.   **Complimentary Account for GI/ Norovirus Cases – Cap System:** a one time payment ($3,500 for ships with 2 doctors, 3 nurses or $3,000 for ships with 1 doctor and 2 nurses) will be split between the members of the medical team in Code Red situations only as follows: $1,000 to each doctor, and $500 to each nurse for ships with 2 doctors, 3 nurses; $1500 per doctor and $750 per nurse for ships with 1 doctor and 2 nurses, per cruise. Cruises which remain in code red following an outbreak cruise would begin anew and would not be eligible for the one time code red payment unless and until the ship again reached the Code Red definition of 1.5% of ill guests on that (subsequent) cruise. To clarify, our guests will not be charged for GI / Norwalk related medical treatment under any code – whether Green, Yellow or Red.

3.   **Travel – Airline ticket and Lodging:** An airline ticket to the designated ship will be provided by the Company. Lodging will be provided if necessary and as determined and arranged by the company. All ground transportation expenses incurred for travel to/from home and to/from the airport are not reimbursable, as this is a personal expense. The return portion of the airline ticket will be provided upon satisfactory completion of the full contracted period.

4.   **Overlap period:** Newly hired physicians joining CELEBRITY CRUISES INC., for their first contract will be offered a maximum of 1 week overlap period, in which they are afforded the opportunity to familiarize themselves with the medical facility and non-medical administrative tasks in order to make their transition period less taxing. During this overlap period the doctor will be paid a maximum of $50 per day and no commissions, comps or other payments.

5.   **Independent Contractor – Cruising Privileges:** The above named physician will be eligible for vendor cruise rates in accordance with the terms and conditions detailed in the company SQM manual. As stated in SQM, a newly employed Physician serving a 1st contract will not be permitted to have guest(s) sailing privileges for the first 3 months of the contract unless and until specifically approved by the Director of Risk Management. A returning physician serving a full contract will be allowed to have his/her spouse and minor children on board for a maximum of four weeks in the Doctor's cabin free of charge. Children travel requests will be granted at the Master's discretion, dependent upon factors including other family visits at the time and officers' seniority. The Physician will be responsible for his/her family's transportation expenses to and from the vessel.

6.   **Notice Provision:** In the event the physician cannot fulfill the stated shipboard term for any reason, physician agrees to give the company a minimum of **14 days written notice**. In the event it becomes necessary for the physician to leave the ship for a **period exceeding ten days** due to medical reasons or other reasons, this contract shall be considered **terminated**. Physician understands and agrees that the Company may terminate without cause provided 7 days notice is given or 7 days pay is given in lieu of notice.


EXHIBIT

D

CEL 00285 3/11/1

DE : DOBLEWOI IHL L-INTERNET-       NO. DE FAX : 8646748       21 SEP. 2005 23:47PM P

7. **Attire:** In order to ensure uniformity and professional appearance, the above named physician will be provided with a standard white physician lab coat, which must be worn while providing medical services in the medical facility over standard business suit attire provided by the company. While the physician is wearing the lab coat he/she is not required to wear the uniform jacket under the lab coat.

8. **Hours:** It is further understood and agreed that, in addition to the established shipboard medical facility schedule and hours, in the event of a medical emergency or necessity, the named physician will be required to work at any time of day or night, and that, at no time, on two doctor ships, under any circumstances, are both physicians to be absent from the vessel at the same time. Ships with one doctor may be permitted ashore with permission of the Master, and must carry and remain within radio range of the ship at all times. As an Independent Contractor, ship's physician is not eligible for overtime payment. If necessary, the physician may be transferred to any CELEBRITY CRUISES INC. vessel during the tenure of this contract, under the aforementioned conditions.

9. **Taxes:** The parties agree that it is the sole responsibility of the doctor to report compensation earned under this contract to any and all tax authorities that may have jurisdiction over the doctor by virtue of tax residence or any other means and to compute and pay any taxes of whatever nature that may be due thereon to that taxing jurisdiction. It is understood that Royal Caribbean and Celebrity are not required to report and withhold income taxes, social insurance taxes or any other kind of tax from the compensation paid under this contract. Such position is applicable only to CELEBRITY CRUISES INC as payor of the compensation under this agreement and is not intended to be nor should it be considered an opinion or a conclusion that such income is not subject to tax in the hands of the doctor in any relevant jurisdiction. Further, the doctor agrees to hold CELEBRITY CRUISES harmless in the event any jurisdiction successfully imposes any form of employment tax, income tax or social insurance tax on the compensation paid under this agreement and agrees to reimburse CELEBRITY CRUISES for any such taxes paid plus penalties and interest assessed thereon.

10. **Insurance/Liability:** As shipboard physicians are independently contracted to provide medical services to guests and crew onboard the above named ship, the named physician is encouraged to secure applicable medical malpractice insurance in amounts and limits of his/her choosing. In recognition of the difficulty of the named physician to locate and secure appropriate medical malpractice insurance in consideration of the unusual nature and constraints of the shipboard environment, including limited 3-6 month contract periods, variable ship flag state and licensing requirements, and constantly shifting treatment locales, as a convenience to the named physician the company has elected to secure a basic insurance coverage not to exceed the sum of one million United States dollars ($1,000,000) per medical malpractice incident.

11. **Insurance/Health:** Shipboard Independent Contractor Physicians shall obtain and maintain personal health insurance, which shall cover both work and non-work related injuries and illness. Proof of such coverage shall be provided to CELEBRITY CRUISES INC upon request. If you are unable to locate such coverage we suggest contacting Marine Health Guard at 305.530.0086, or, benefits@mhgmarine.com.

12. **Personal Expenses:** The above named physician is responsible for any expenses incurred for Pre-Employment Medical, ACLS certification or recertification, and any charges incurred to obtain necessary Visa to travel.

In Witness Hereto the parties set their hand and seal:

Physician Signature: _____

_09/20/05_ /Date

Vincent J. Warger, Jr.
Director, Claims & Medical Services
Royal Caribbean International / Celebrity Cruises

_____

_10/5/05_ /Date

CEL(2) 0000286 3/1/11